IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUMMER PINES VILLAS
HOMEOWNERS ASSOCIATION, INC,

                            Plaintiff,                      OPINION and ORDER

   v.

                                                                     24-cv-326-jdp

OWNERS INSURANCE COMPANY,

                            Defendant.

---

       This is an insurance coverage dispute between plaintiff Summer Pines Villas Homeowners Association, Inc., and defendant Owners Insurance Company. A hailstorm damaged several buildings owned by Summer Pines. Owners Insurance investigated the claim and paid to replace all the buildings' roofs and some siding on the buildings' exteriors. But when Summer Pines asked Owners Insurance to replace siding on undamaged areas so that it would match the siding replaced due to storm damage, Owners Insurance denied the request, asserting that matching was not covered by the policy. Summer Pines filed this lawsuit, requesting a declaration that the policy covers matching and that the parties' dispute is subject to appraisal.

       Owners Insurance moves for judgment on the pleadings, contending that the policy does not cover matching and that the dispute is not subject to appraisal because the parties disagree about coverage, not the amount of loss. The court will deny Owners Insurance's motion. The policy is ambiguous as to whether matching is covered, so under Wisconsin law, the ambiguity is resolved in favor of coverage. And the parties' dispute is subject to appraisal, because the parties agree that there was covered damage to the siding; their disagreement is about how to repair the damage. Because the relief requested in the complaint is a declaration

on these two issues, the court will order the parties to show cause why judgment should not be entered in Summer Pines' favor and this case closed.

## BACKGROUND

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court may consider "the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The standard for a Rule 12(c) motion is the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6). The court must accept all plausible factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Id.*

The court draws the following facts from the parties' pleadings, the briefs, and the documents Owners submitted along with its motion, including a coverage position letter it sent to Summer Pines, Summer Pines' demand for appraisal, and Owners Insurance's responses to that demand. Dkts. 14-1–14-4. These documents are central to Summer Pines' claims, Summer Pines refers to them in its complaint, and Summer Pines does not dispute their authenticity, so the court may consider these documents without treating the motion as one for summer judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

In May 2022, a hailstorm damaged eighteen buildings owned by Summer Pines and insured by Owners Insurance. Summer Pines reported a claim and Owners Insurance assigned a third-party investigator to inspect the damage. Owners Insurance determined that all eighteen roofs needed replacement. It also found scattered damage to the exterior walls, which necessitated replacing some siding. In July 2022, Owners Insurance paid Summer Pines $855,120.49 for the claim.

Summer Pines disagreed with Owners Insurance's coverage determination about the exterior wall damage. Summer Pines believed that both damaged and undamaged siding needed to be replaced under the policy, because otherwise there would be a visual mismatch between the existing siding and the newly replaced siding. Summer Pines requested that Owners Insurance cover a full replacement of all siding on the buildings. Owners Insurance denied the request, saying that its policy covered only "direct physical loss," so "[a]reas that do not have damage will not be considered." Dkt. 14-1, at 3. Summer Pines demanded an appraisal under the policy's appraisal clause, which allows either the insurer or the insured to demand appraisal if they disagree about the "amount of loss." Owners Insurance denied an appraisal, asserting that the dispute was about coverage, not the amount of loss.

Summer Pines filed this lawsuit in state court in St. Croix County, seeking a declaration on two issues: (1) that the policy covers replacement of undamaged siding so that it matches the newly replaced siding; and (2) that Summer Pines is entitled to an appraisal to determine the amount owed to replace siding. Owners Insurance removed to this court. This court has diversity jurisdiction under 28 U.S.C. § 1332(a). According to the notice of removal and Wisconsin state business records, Summer Pines is a corporation incorporated in Wisconsin with its principal place of business in Wisconsin, so it is a citizen of Wisconsin. Owners Insurance is a corporation incorporated in Michigan with its principal place of business in Michigan, so it is a citizen of Michigan. The amount-in-controversy requirement is met because the value of the siding repair in dispute exceeds $75,000. *See Enbridge Pipelines (Illinois) LLC v. Moore*, 633 F.3d 602, 605–06 (7th Cir. 2011) (when declaratory relief is requested, the amount-in-controversy is the value of the declaration).

ANALYSIS

The central issue is whether Summer Pines' insurance policy covers replacement of undamaged siding if necessary to visually match newly replaced siding on damaged areas. If the policy covers matching, then a secondary issue is whether the parties' dispute is subject to appraisal under the policy. Owners Insurance moves for judgment on the pleadings on the basis that the policy does not cover matching or allow for appraisal under these circumstances.

A.  Coverage for matching

The parties' dispute about matching is a question of policy interpretation. Under Wisconsin law, which both parties agree applies in this case, insurance policies are contracts, to which the general principles of contract law apply. The court must interpret policy language "to give effect to the intent of the parties," using the language's "plain and ordinary meaning, as understood by a reasonable person in the position of the insured." *Phillips v. Parmelee*, 2013 WI 105, ¶ 12, 351 Wis. 2d 758, 840 N.W.2d 713. Any ambiguity in the policy language is construed in favor of the insured. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154.

Courts interpreting similar insurance policies have reached conflicting results as to coverage for matching. *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, No. 16 C 3860, 2018 WL 1784140, at *3 (N.D. Ill. Apr. 13, 2018), *aff'd*, 932 F.3d 1035 (7th Cir. 2019) (collecting cases). The Wisconsin Supreme Court has not yet addressed the issue. But decisions from other jurisdictions rely on contract interpretation principles that also apply in Wisconsin, so their reasoning is persuasive. *See, e.g., Windridge*, 932 F.3d 1035 (Illinois law); *Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55 (D.D.C. 2015) (D.C.

law); *Cedar Bluff Townhome Condo. Ass'n, Inc. v. Am. Fam. Mut. Ins. Co.*, 857 N.W.2d 290, 294 (Minn. 2014) (Minnesota law).

The parties identify two policy provisions that are relevant to the matching issue, which the court will refer to as the coverage provision and the payment provision. The coverage provision states that the policy covers "direct physical loss of or damage to Covered Property." Dkt. 16-1, at 59. Owners Insurance contends that this provision limits coverage to portions of siding directly hit by the storm, so there is no coverage to replace undamaged siding. Some case law supports Owners Insurance's interpretation. *E.g.*, *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447-CIV, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011). But the better interpretation is that damage to any siding on a covered building triggers coverage for all the siding on the building. *E.g.*, *Windridge*, 932 F.3d 1035; *Nat'l Presbyterian Church*, 82 F. Supp. 3d 55. This interpretation is supported by the definition of "covered property" in the policy, which is defined in relevant part as "buildings and structures at the premises." Dkt. 16-1, at 59. The definition suggests that the relevant unit of analysis is the entire building or structure, so if there is "direct physical loss of or damage to" any part of a building or structure, then coverage is triggered for the entire building or structure.

The payment provision gives Owners Insurance four options to pay for covered losses or damage. Owners Insurance can (1) "[p]ay the value of the lost or damaged property;" (2) "[p]ay the cost of repairing or replacing the lost or damaged property;" (3) "[t]ake all or any part of the property at an agreed or appraised value;" or (4) "[r]epair, rebuild or replace the property with other property of like kind and quality." *Id.* at 69. The value of lost or damaged property is determined "at replacement cost (without deduction for depreciation)," with the following caveat:

> (c) We will not pay more for loss or damage on a replacement cost basis than the least of:
>
>> (i) The cost to replace, on the same premises, the lost or damaged property with other property:
>>
>>> i. of comparable material and quality; and
>>>
>>> ii. used for the same purpose; or
>>
>> (ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

*Id.*

Owners Insurance contends that the payment provision explicitly excludes coverage for matching because it limits payment to the cost to replace "the lost or damaged property" with material of "comparable material and quality . . . used for the same purpose." Owners Insurance argues that this provision requires it to replace only the damaged portions of siding with comparable siding of the same quality, regardless of whether that siding matches the adjacent undamaged siding.

The key question here, as with the coverage provision, is the unit of measurement. *See Nat'l Presbyterian Church*, 82 F. Supp. at 59 ("the crux of the issue seems to be whether *this* policy's coverage of damaged property refers to the smallest unit possible . . . or to one larger") (emphasis in original). Under Owners Insurance's interpretation, "lost or damaged property" refers only to the pieces of siding that were hit by the hail, so Owners Insurance is obligated to replace only those pieces of siding with comparable siding. But "lost or damaged property" could just as reasonably refer to the damaged siding as a whole. Under that interpretation, Owners Insurance would have to pay for matching, because no reasonable person in the position of the insured would consider mismatched siding to be of "comparable material and quality" to matched siding. *See Cedar Bluff Townhome Condo. Ass'n*, 857 N.W.2d at

6

294 (plain meaning of "comparable material and quality" requires matching). Because the payment provision is ambiguous as to the unit of measurement, it must be construed in favor of the insured, which means that it provides coverage for matching.

The court's conclusion that matching is covered doesn't necessarily entitle Summer Pines to a full siding replacement. There are very few factual allegations in the complaint, so it's not clear whether replacing all the siding is necessary in this case to achieve a reasonable repair of Summer Pines' buildings, or whether adequate matching could be achieved through some other method. But as the court will explain below, that question is subject to appraisal.

### B. Appraisal

Summer Pines contends that Owners Insurance breached the appraisal clause in the policy by denying Summer Pines' demand for an appraisal. The appraisal clause states that if Summer Pines and Owners Insurance disagree about the "amount of loss," either side can demand an appraisal. Owners Insurance contends that the appraisal clause does not apply because the parties disagree about coverage, not about the amount of loss.

When an appraisal process is limited to disagreements about the "amount of loss," that means the value of the loss, not whether a given loss is covered by the insurance policy. *St. Croix Trading Co./Direct Logistics, LLC. v. Regent Ins. Co.*, 2016 WI App 49, ¶¶ 11–14, 370 Wis. 2d 248, 882 N.W.2d 487. The role of an appraisal panel is to determine the "means and cost of correcting the damage," not to determine whether or not there is covered damage. *Higgins v. State Farm Fire & Cas. Co.*, No. 22-C-198, 2022 WL 4016972 (E.D. Wis. Sept. 2, 2022).

The distinction between a means and cost question versus a coverage question is illustrated by comparing *Novak v. State Farm Fire and Casualty Company*, 687 F. Supp. 3d 820 (E.D. Wis. 2023) with *Windsor v. State Farm Fire and Casualty Company*, No. 22-cv-734, 2023

7

WL 4197462 (E.D. Wis. June 27, 2023), two federal cases applying Wisconsin law. In *Novak*, the parties disagreed about whether a hailstorm had damaged the insured's roof. 687 F. Supp. 3d at 823–24. Novak insisted that the roof was damaged because of the hailstorm, but State Farm maintained that any roof damage was normal wear and tear. *Id.* The court concluded that this was not an appropriate dispute for appraisal because it was not a question of the amount of loss; it was a question of whether there was a covered loss in the first place. *Id.* at 825.

By contrast, in *Windsor*, the parties agreed that the Windsors' basement wall had been damaged by blasting at a neighboring property. The Windsors insisted that the wall damage compromised the entire structure, so the entire home needed to be razed and rebuilt. State Farm maintained that the wall could be safely removed and replaced without compromising the entire structure. The court concluded that an appraisal was warranted because the parties agreed that the wall damage was covered; their disagreement was about how to repair the damage.

This case is more like *Windsor* than *Novak*. The parties agree that a hailstorm damaged siding on Summer Pines' building, so there is no dispute about whether there is covered damage. The disagreement is about how to properly repair the damage. Owners Insurance asserts that a partial replacement of the siding on the damaged areas is enough; Summer Pines asserts that a full siding replacement is needed because there is no other way to ensure that all the siding matches. This is a dispute about the means and cost of repairing the damage, so Owners Insurance is obligated by the policy to grant Summer Pines' demand for an appraisal.

C.  **Next steps**

The court has concluded that the policy covers matching and that the policy's appraisal clause applies the parties' dispute, so it will deny Owners Insurance's motion for judgment on

8

the pleadings. The court's decision appears to resolve all the issues in this case because the only relief requested in the complaint is a declaration that the policy covers matching and that the policy provides for appraisal under these circumstances.

The court will give each party until February 19, 2025, to show cause why the court should not enter judgment in Summer Pines' favor and close this case. Owners Insurance should identify any legal or factual issues that remain in dispute. As for Summer Pines, the complaint asks the court to stay the case pending appraisal and allow the parties to amend their pleadings after appraisal. Dkt. 4-1, at 6. But if the court entered judgment and closed the case, that would not prevent Summer Pines from bringing a new lawsuit if a new claim arose following appraisal. Summer Pines should explain why the court should stay the case pending appraisal instead of closing the case.

ORDER

IT IS ORDERED that:

1. Defendant Owners Insurance Company's motion for judgment on the pleadings, Dkt. 11, is DENIED.

2. The parties will each have until February 19, 2025, to show cause why the court should not enter judgment in Summer Pines' favor and close this case. Owners Insurance should identify any legal or factual issues that remain in dispute. Summer Pines should explain why the court should stay the case pending appraisal instead of closing the case.

Entered January 30, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge